Eastern District of Kentucky
**FILED**

APR 0 1 2005

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

CIVIL ACTION NO. 04-526-KSF

INTERSTATE COMMISSION FOR                                          PLAINTIFF
ADULT OFFENDER SUPERVISION

V.            **PRELIMINARY INJUNCTION**

TENNESSEE BOARD OF                                                  DEFENDANTS
PROBATION AND PAROLE and
STATE OF TENNESSEE

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the plaintiff's motion for a preliminary injunction [DE # 8]. The parties have filed briefs, along with supporting documents, in support of their respective positions. Having been fully briefed, this matter is ripe for review.

I.      **FINDINGS OF FACT**

The plaintiff, Interstate Commission for Adult Offender Supervision (the "Commission"), is an interstate administrative agency established by statutes creating the Interstate Compact for Adult Offender Supervision (the "Compact"). The Compact has been enacted in forty-nine states, including Tennessee,[1] and the District of Columbia and Puerto Rico. The defendant, Tennessee Board of Probation (the "Board"), is an agency of the State of Tennessee and is responsible for the regulation and supervision of adult criminal offenders on probation and parole within the State of Tennessee, including the application of the Compact and its regulations.

---

[1] *See* Tenn. Code Ann. § 40-28-401.

Since the State of Tennessee is a member of the Compact, it is contractually obligated to the other member states to comply with the provision of the Compact and its duly authorized rules. The Board and the State of Tennessee are hereinafter collectively referred to as the "Defendants".

On May 27, 2004, the Commission notified the Defendants that pursuant to provisions of the Compact and Rule 3.101(a), Defendants' policy of requiring states from which an offender seeks to transfer to administer and obtain from any offender convicted of a sex crime a psychiatric evaluation and report prior to approving said transfer, pursuant to the Tennessee Standardized Treatment Program for Sex Offenders, Tenn. Code Ann. §§39-113-701, *et seq.*, was in violation of the Compact rules by improperly adding to the requirements under this Rule. Rule 3.101(a) states:

> (a) At the discretion of the sending state, an offender who has three months or more or an indefinite period of supervision remaining shall be eligible for transfer of supervision to a receiving state under the compact, and the receiving state shall accept transfer, if the offender, pursuant to a valid plan of suspension –
> (1) is in substantial compliance with the terms of supervision in the sending state and
> (2) is a resident of the receiving state; or
> (3) (A) has resident family in the receiving state who have indicated willingness and ability to assist as specified in the plan of supervision; and
> (B) can obtain employment in the receiving state or has a visible means of support.

*See* Rule 3.101(a). The Commission had received complaints from Georgia, Oregon and New York that eligible offenders were being denied transfer because they had not complied with this policy. Additional grievances have been filed by Ohio, Illinois and Louisiana. The Commission notified Defendants again on August 3, 2004 and October 4, 2004 that the Commission would refer the matter for an enforcement action in the absence of its agreement to comply with the terms of the Compact rule. Defendants continue to enforce their policy of requiring states from

which an offender seeks to transfer to administer and obtain from any offender convicted of a sex crime a psychiatric evaluation and report prior to approving the transfer.

## II. CONCLUSIONS OF LAW

It is well established in the Sixth Circuit that the Court must balance the following elements in deciding whether to grant a preliminary injunction: "(1) whether the movant has a 'strong' likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." *Summit County Democratic Central and Executive Committee v. Blackwell*, 388 F.3d 547, 550-51 (6th Cir. 2004) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). These four factors are factors to be balanced, not prerequisites that must be met. *See In re DeLorean Motors Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). Even though the court must engage in this balancing test, "a plaintiff must *always* demonstrate some irreparable injury before a preliminary injunction may issue." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 104 (6th Cir. 1982).

### A. Likelihood of Success on the Merits

The Commission states that it has a likelihood of success on the merits because the Defendants' policy violates the Compact since it adds an additional requirement for transfers under the provisions of Rule 3.101(a). The Commission asserts that the Compact and its rules prevail over any unilateral action by a state, and since the Defendants' policy is in violation of the Compact, the Commission is entitled to a preliminary injunction.

First, this Court has jurisdiction over this matter because the Compact, a congressionally sanctioned interstate compact, is a federal law as well as state law. *See Doe v. Ward*, 124

3

F.Supp.2d 900, 911-12 (W.D. Penn. 2000); *Cuyler v. Adams,* 449 U.S. 433, 440 (1981) (finding that interstate compacts receiving congressional approval enjoy the status of federal law). The administrative rules adopted by the Commission function as the law of the United States applicable to the member states under the terms of the Compact and through the operation of the Supremacy Clause. *See Carchman v. Nash,* 473 U.S. 716, 719 (1985). Thus, obligations imposed by a congressionally sanctioned compact and a duly authorized interstate commission are enforceable on the states. *See West Virginia ex rel. Dyer v. Sims,* 341 U.S. 22, 30 (1951). Moreover, the terms of compacts and any rules and regulations authorized by compacts supersede substantive state laws that are conflicting. *Id.* at 29. Since Tennessee has imposed an additional requirement that any other state from which an offender seeks to transfer to Tennessee must first administer and obtain a psychiatric evaluation from any offender convicted of certain sex crimes which are defined under Tennessee law, the Commission asserts Tennessee has unlawfully unilaterally modified the requirements of Rule 3.101(a).

The Commission relies heavily on the case of *Doe v. Ward,* 124 F.Supp.2d 900 (W.D. Penn. 2000). In *Ward,* a convicted sex offender filed a complaint seeking injunctive relief in connection with the state's application of its Sexual Offenders Act to him to the extent that he had been subjected to community notification of an out-of-state conviction. The Act provided for individualized determination as to which in-state sex offenders should initially be subjected to community notification, but all out-of-state sex offenders were automatically subjected to community notification. The plaintiff had applied for a transfer of supervision to Pennsylvania pursuant to the Compact and was automatically subjected to community notification in Pennsylvania. The Court held that the Compact required Pennsylvania to provide the plaintiff with the same process as was provided to in-state offenders before subjecting the plaintiff to

4

community notification.[2] *Id.* at 911. The Court also made the following finding about the Compact, "The plain language of the Parole Compact indicates that the authority to approve a probationer's move to a receiving state lies solely with the sending state if, like [plaintiff], the probationer meets the requirements outlined in subsection (1)(a) – i.e., the probationer is either a resident of the receiving state or has family residing there and he or she can obtain employment there." *Id.* at 912. Moreover, the court concluded that once a sending state grants permission under subsection (1)(a) or (b), the receiving state must assume supervision over the probationer and that the receiving state does not have to consent to the transfer because "[i]f, for example, a receiving state's consent to a transfer were always required, as the defendants argue, subsection (1)(a) of the Parole Compact would be meaningless." *Id.* at 913.

The Defendants contend that *Ward* is distinguishable because the state statute in issue in *Ward* treated out-of-state offenders differently than in-state offenders. The Defendants argue that in *Ward* the additional registration and community notification requirements violated the Compact by placing additional requirements on out-of-state offenders. Since the policy in issue in the instant case applies equally to in-state and out-of-state offenders, the Defendants assert that the provision does not violate the Compact.

---

[2] The Court based its conclusion on the following rule:

> A receiving state shall supervise an offender transferred under the interstate compact in a manner determined by the receiving state and consistent with the supervision of other similar offenders sentenced in the receiving state.

*See* Rule 4.101, Manner and degree of supervision in receiving state.

In *Ward*, the court recognized that two other states, Illinois and Tennessee[3], have statutes which place specific conditions on the acceptance of transfers under the Compact. The court concluded that these statutes would not run afoul of the Compact's non-discretionary transfer provision because they have imposed as a condition of acceptance a requirement that an out-of-state sex offender would have to comply with anyway, once he or she transfers to the state. *Id.* at 915. In the instant case, the Tennessee Standardized Treatment Program for Sex Offenders, TCA §39-113-701, *et seq.*, appears similar to the Illinois and Tennessee statutes referred to in the *Ward* case in that it imposes as a condition of acceptance a requirement that an out-of-state sex offender would have to comply with once he transfers to the state.

Although *Ward* seems to imply that provisions that treat in-state and out-of-state offenders equally would not run afoul of the Compact, a closer review of the explicit language of the Compact reveals that it is mandatory for receiving states to accept offenders from sending states. Rule 3.101(a) clearly states that a receiving state "shall accept transfer" if the probationer is either a resident of the receiving state or has family residing there and he or she can obtain employment there. Rule 3.101(a), thus, makes the acceptance of a transfer mandatory on the receiving state. Defendants argue that Rule 3.101(a) must be read in light of Rule 4.103, which reads:

> (a) At the time of investigation or during the term of supervision, the compact administrator or supervising authority in the receiving state may impose a special condition on an offender transferred under the interstate compact if that special condition would have been imposed on the offender if sentence had been imposed in the receiving state.
> (b) A receiving state shall notify a sending state that it intends to

---

[3] The statutes referenced in *Ward*, TCA §§ 40-28-409 and 40-35-21, are not at issue in this matter.

> impose or has imposed a special condition on the offender, the nature of the special condition, and the purpose.
> (c) A sending state shall inform the receiving state of any special conditions to which the offender is subject at the time or request for transfer is made, or when it becomes available.
> (d) A receiving state that is unable to enforce a special condition imposed in the sending state shall notify the sending state of its inability at the time of request for transfer of supervision is made.

*See* Rule 4.103, Special Conditions. Defendants interpret this provision as authorizing them to impose special conditions on transferring offenders as long as the special conditions would have been imposed on the offender if the offender was sentenced in the receiving state.

However, the Commission states that section (a) should be read to state that the receiving state may only impose this special condition once the offender has been transferred, not before the transfer. The clear language of the statute states that the special conditions may be imposed on an "offender transferred". The language of the statute, therefore, supports the Commission's argument.

Section 3.101(a) states that once a sending state grants permission under subsection (1)(a) or (b), the receiving state must assume supervision over the probationer and the receiving state does not have to consent to the transfer. *See Ward*, 124 F.Supp.2d at 912. Furthermore, Section 4.103(a) permits special conditions to be applied to offenders once they transferred. Thus, Tennessee's statute, conditioning acceptance of a transferee on a special condition to be imposed prior to the transfer, violates the plain meaning of the Compact. If Defendants' requirements stated merely that an offender had to consent to a psychiatric evaluation upon being transferred to Tennessee, such a provision would not run afoul of the Compact. But, requiring a sending state to perform a psychiatric evaluation before transferring places a burden on the sending state and

7

the Compact.[4] Accordingly, the Commission has established a likelihood of success on the merits.

### B. Irreparable Harm

The Commission contends that it, and the public, will suffer irreparable harm if the injunction is not granted because the only remedy in this matter is the enforcement of Tennessee's duty to act consistent with the other fifty jurisdictions, including forty-eight other states, the District of Columbia and Puerto Rico, that are parties to the Compact. If Tennessee is allowed to continue its actions, it and possibly other states would be able to stop or limit the transfer of certain undesirable offenders. Moreover, Tennessee's actions are frustrating the rehabilitative purposes of the Compact by not allowing offenders to return to communities where they have family support and employment opportunities. The Commission argues that monetary damages are not satisfactory in this matter because the Court would not be able to issue monetary damages in order to repair the harm done in Tennessee's effort to subvert the uniformity of the Compact. *See Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995) ("As a general rule, a movant has not established irreparable harm where damages would adequately compensate the movant for the asserted harm."). The potential harm to the uniformity of the Compact is substantial. Accordingly, the Court finds that the Commission has satisfied this element.

---

[4] One party to an interstate compact may not enact legislation which would impose burdens upon the compact absent the concurrence of other signatories. *See C. T. Hellmuth & Associates, Inc. v. Washington Metropolitan Area Transit Authority*, 414 F.Supp. 408, 409 (D.Md.1976) (citations omitted). "It is within the competency of a State, which is a party to a compact with another State, to legislate in respect of matters covered by the compact so long as such legislative action is in approbation and not in reprobation of the compact." *Henderson v. Delaware River Joint Toll Bridge Comm'n*, 362 Pa. 475, 66 A.2d 843, 849 (1949).

8

C.  **Harm to the Defendants and Others**

The Commission also states that the requested relief is fair and equitable and will not result in the Defendants suffering harm. Defendants state that harm will result because they believe that if an offender will not agree to undergoing a psychiatric evaluation in the sending state, they would not agree to doing so upon arriving in Tennessee. This concern could easily be remedied by requiring offenders to consent to undergoing an evaluation in Tennessee once they transfer as a portion of the application process.[5] Thus, the harm to Defendants is slight. Moreover, any harm would be outweighed by effectuating the primary benefit of the Compact – the uniform criteria that it provides upon the basis of which offenders under supervision may transfer from one state to another while allowing the states to collectively exercise their sovereignty over this area of the criminal justice process. Thus, the Court finds that the Commission has satisfied this criteria.

D.  **Public Interest**

Lastly, the Commission claims that the public interest would be served by issuing an injunction because the Compact's provisions establish uniform procedures to manage the movement of supervised offenders. The party states' interest and their public's interest is in uniformity for the process of transferring offenders and in the offenders being rehabilitated

---

[5] For example, Tennessee also requires that offenders who have been convicted of a sexual offense enroll in a sex offender treatment program within thirty days of arrival in Tennessee. *See* Tenn. Code Ann. §40-28-409. Similarly, Tennessee could require that offenders transferring to Tennessee undergo a psychiatric evaluation within a certain number of days after arriving in Tennessee.

9

through relocation in a state where the offender has family support and employment. Thus, the Court finds that the issuance of a preliminary injunction is in the best interest of the public.

### III. CONCLUSION

Based on the language of the Compact, the Commission has shown that it has a likelihood of success on the merits of the case. Additionally, the other factors weigh in favor of the Commission. Thus, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that:

(1) the plaintiff's motion for a preliminary injunction [DE #8] is GRANTED;

(2) pending further orders of the Court, the defendants, their respective officers, agents, representatives, employees and successors, and all other persons in active concert and participation with them, are hereby restrained and enjoined from denying interstate transfers under the Compact of adult offenders who meet the eligibility requirements concerning residency and employment under Rule 3.101(a) and restraining and enjoining defendants from imposing the additional requirement of psychological evaluation of sex offenders as a condition of approving such transfers;

(3) this Temporary Restraining Order is issued at __11__ A.m. on __APRIL__, __1__, 2005, and shall become effective upon the plaintiff's posting of a cash or surety bond in the amount of $__1,000__; and

(4) the Clerk of the Court is directed to immediately forward a copy of this Order by FAX and by regular mail.

This __1st__ day of April, 2005.

_KSF_
KARL S. FORESTER, CHIEF JUDGE